UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

LINDA NIGINO,

               Plaintiff,

- against -

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

               Defendant.

-----------------------------------------------------------X

**MEMORANDUM AND ORDER**

04-cv-3207-ENV

**VITALIANO, D.J.**

Plaintiff Linda Nigino commenced this action pursuant to 42 U.S.C. § 405(g). Ms. Nigino seeks a review of the final determination by the defendant Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits under the Social Security Act (the "Act"). The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Court remands Nigino's disability application for further proceedings.

**I.**     **BACKGROUND**

**A.**     **Factual History**

Linda Nigino was born on July 20, 1959. She was 43 years old on the date of the alleged onset of her symptoms, in 1992, and 46 years old at the time of the initial hearing on her disability claim before an Administrative Law Judge ("ALJ"), in 1995. Nigino has a high school degree and, during the same year the disability hearing was held, she completed a 6-month computer training course at a community college. For more than 20 years prior to the alleged onset of her symptoms,

---

[1] Michael J. Astrue, the current Commissioner of Social Security, took office on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted as the defendant in this action.

Nigino had worked as a secretary, an occupation that involved sitting, typing, filing, use of a dictaphone, and shorthand. Her employment also entailed sitting for about seven hours each day, frequent bending, lifting weight up to 20 pounds, and frequent lifting or carrying a weight of ten pounds. Plaintiff stopped working as a legal secretary in June of 1991 when she was laid off by her employer. Subsequently, she applied for and began collecting unemployment insurance benefits. Nigino testified at her disability hearing that she looked for work after being laid off, but was unable to find employment due to her lack of computer training.

Starting in about August 1992, Nigino noticed a feeling of numbness in her hands. Plaintiff testified that she had pain in both of her hands and numbness in her fingers, which made it difficult for her to work on a computer. Nigino reported that she experienced pain in her left hand and wore a support while sleeping. She stated that she dropped items like silverware while doing the dishes, and found it difficult to carry certain kinds of groceries. In addition, plaintiff reported that she suffered from edema in her ankles, peptic ulcer disease, anxiety and insomnia. When providing information about her activities on her disability report, Nigino stated that she could do light cooking and housework and light grocery shopping three times a week, but that she was limited in the recreational activities she could perform and the amount of driving she could do. Plaintiff testified that she never had surgery on her hands and was not taking any medication for her ailments aside from over-the-counter medication for her pain and water pills for her edema.

On March 9, 1995, plaintiff sought medical treatment from Dr. Susan Mirkinson, complaining of swelling in her feet. This was Nigino's first, and only, visit to Dr. Mirkinson. Because she had not treated plaintiff before, Dr. Mirkinson advised Nigino that she would need to complete a full physical before she could be treated for any of her chronic medical problems. Dr. Mirkinson also declined to fill out any disability papers for plaintiff, stating that she was not her

regular doctor for her chronic problems and thus was "in no position to determine whether she is a candidate for disability," absent a full medical work-up. (R. at 83.)

Nigino never received a complete physical from Dr. Mirkinson, but instead was referred to a second physician, neurologist Dr. Daniel Rubin. Dr. Rubin treated plaintiff a single time, on May 11, 1995. Nigino informed Dr. Rubin that she was seeking medical treatment for the pain in her hands, which had begun three years earlier, and explained to the doctor that the pain was now getting worse and was associated with numbness. Plaintiff also complained of (1) edema of the ankles, for which she told Dr. Rubin she had been taking Furosemide and a potassium supplement; and (2) gastrointestinal problems, for which she had been taking Tagamet. She also complained generally of insomnia, anxiety, and some discomfort with neck extension. Dr. Rubin noted hypesthesia over both medium nerve distributions, right greater than left, that Phalen's signs were present bilaterally, that all the tendon reflexes were active and symmetric, and the plantars were flexor. Dr. Rubin observed finally that the remainder of Nigino's neurological examination was normal. Dr. Rubin suspected bilateral carpal tunnel syndrome, advised plaintiff to wear wrist splints, and sought authorization for EMG and nerve conduction studies.

The nerve conduction and EMG studies were performed on May 23, 1995. These tests showed evidence of right ulnar nerve compromise at the elbow which did not result in any detectable degree of motor axon degeneration. Further, the studies revealed no electrophysiological evidence of median nerve compromise at the wrists or right cervical radicular dysfunction.

On August 25, 1995, at the request of the Social Security Administration ("SSA"), Nigino received a disability examination from a third physician, Dr. Richard Parker. His physical examination of plaintiff's upper extremity revealed positive Tinel and Phalen's tests. Dr. Parker determined that plaintiff's neurovascular status was intact and noted that she demonstrated a full range of motion of the cervical spine. Nevertheless, Dr. Parker's medical impression, assuming

Nigino's medical history to be accurate, was that she suffered from right-sided carpal tunnel syndrome, possibly related to typing. He requested EMGs to confirm his medical impression of her condition, but stated that she was temporarily, partially disabled.

One month later, on September 25, 1995, a state agency physician, Dr. Anthony Buonocore, reviewed plaintiff's medical records and completed an assessment regarding her ability to perform physical work-related activities. Dr. Buonocore concluded that, in his medical opinion, Nigino retained the ability to perform light work, in that she occasionally could lift and/or carry up to 20 pounds, frequently could lift and/or carry up to ten pounds, and could stand and/or walk for about six hours in an eight-hour day. Dr. Buonocore further noted that Nigino needed to periodically alternate sitting and standing to relieve pain and discomfort, although he did not explain the reason for this conclusion. Finally, he determined that plaintiff retained her ability to push and/or pull in her lower and upper extremities and possessed no other postural, manipulative, visual, communicative, or environmental limitations.

**B.     Procedural History**

On March 13, 1995, shortly after her visit to Dr. Mirkinson, Nigino filed an application for disability benefits with the SSA. Nigino alleged a disability beginning on August 24, 1992 and identified as her disabling condition carpal tunnel syndrome involving numbness and pain in both of her hands. The SSA denied plaintiff's claim for disability insurance benefits initially, on July 13, 1995, and upon reconsideration. Nigino then requested a hearing, which was held before ALJ Daniel Slattery on July 12, 1996, with plaintiff appearing *pro se*. On July 24, 1996, the ALJ issued a decision concluding that plaintiff was not disabled. The ALJ found that the plaintiff retained "a residual functional capacity completely compatible with the performance of sedentary/light work, which during the course of an eight-hour workday entails sitting for up to six hours, standing/walking for up to six hours and lifting up to 20 pounds on an occasional basis." (R. at 24.)

4

On September 21, 1996, plaintiff requested a review of the ALJ's decision from the Appeals Council. On February 11, 1998, the Appeals Council declined to review the claim, making the ALJ's decision the final administrative determination. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000). However, it appears Nigino did not receive a copy of the determination and was not apprised of the unfavorable decision until February 2000. Upon learning of the decision, Nigino submitted a written request to the Appeals Council for an extension of her deadline for filing an action in federal court, which the Appeals Council granted.

Plaintiff commenced an action in this Court on December 14, 2000 seeking a review of a final determination of the Commissioner. See Civil Action No. 00-CV-7398. Due to difficulties locating plaintiff's claim file, the Commissioner was unable to compile the administrative record for filing with the Court. By stipulation and order dated July 16, 2001, the Court (per Mishler, J.) closed the case. Subsequently, however, the Commissioner located Nigino's claim file, and on July 26, 2004, plaintiff's case was reopened and assigned the current docket number. The parties have cross-moved for judgment on the pleadings.

## II. **DISCUSSION**

### A. **Standard of Review**

Section 405(g) of the Act empowers district courts to review a disability decision of the Commissioner and affirm, reverse, or modify that decision, "with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004). However, this power of review is not unbounded. When evaluating a determination by the Commissioner to deny a claimant disability benefits, the Court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether an ALJ's findings are supported by substantial evidence, a court must consider the "entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 2000). However, the district court may not substitute its judgment for that of the Commissioner, even if it may have reached a different result after reviewing the case *de novo*. Jones v. Sulivan, 949 F.2d 57, 59 (2d Cir. 1991).

At the same time, when evaluating an appeal from the Commissioner's final decision, courts must keep in mind that the Act is a remedial statute that must be construed broadly and "liberally applied." Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975). Accordingly, courts should not hesitate to remand "for the taking of additional evidence, on good cause shown, where relevant, probative, and available evidence was either not before the Secretary or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of a claimant's application." Id.; see also Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999).

**B.    Standards for Entitlement to Benefits**

To be eligible for disability benefits, a claimant must establish that she was disabled within the meaning of the Act prior to the expiration of her insured status. 42 U.S.C. §§ 423(a)(1)(A), 423(c). The SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant qualifies as disabled. See, e.g., Rosa, 168 F.3d at 77. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a "severe" impairment that limits her work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if such an impairment exists, the ALJ evaluates whether the impairment meets or equals the criteria of an impairment identified in the

Commissioner's appendix of listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ must resolve whether the claimant has the residual functional capacity ("RFC") to perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if the claimant cannot perform her past work, the ALJ determines whether there is other work that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proof as to the first four steps. See, e.g., Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998). If the claimant proves that her impairment prevents her from performing past relevant work, the burden shifts to the Commissioner at the final step. Id.

When evaluating a disability claim using this five-step process, the ALJ must weigh four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 2000) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

**C.  Disposition**

In reviewing plaintiff's case, the ALJ applied the five-step sequential analysis and concluded that Nigino had satisfied her burden on the first four steps. However, as to the last step, the ALJ, relying on the medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, (the "grids"), held that Nigino retained the ability to perform other sedentary or light work and, therefore, that she was not disabled. Because it was legal error for the ALJ to rely automatically on the grids without first evaluating whether they applied in light of the non-exertional impairments the ALJ found afflicted Nigino, her claim must be remanded for further proceedings.

1.  **Application of the Grids**

Upon reaching the fifth step of the sequential analysis, the ALJ turned to the medical vocational guidelines to determine whether plaintiff possessed the ability to perform other jobs that existed in significant numbers in the national economy. Applying the grids in light of Nigino's RFC, age, education, and vocational history, the ALJ concluded that plaintiff could perform other sedentary or light work and thus was not disabled. Nigino argues that because she suffered from non-exertional impairments not contemplated by the grids, the ALJ's exclusive reliance on those guidelines was inappropriate.

"In the ordinary case, the Commissioner meets his burden at the fifth step by resorting" to the grids, Rosa, 168 F.3d at 78, which provide rules for determining disability that "reflec[t] major functional and vocational patterns." 20 C.F.R. § 404.1569. However, while grid results are usually dispositive, they are not always so because the grids, by design, "do not cover all possible variations of factors" that may afflict a claimant. Id.; Rosa, 168 F.3d at 78 ("exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations"). Stated differently, although the grids generally direct a disability determination where a claimant complains of exertional impairments only, they will not apply where a claimant suffers solely from non-exertional limitations, and may not provide an exclusive framework for the disability evaluation where a combination of these impairments are in play.[2] See Johnston v. Astrue, No. 07-CV-5089, 2008 WL 4224059, at *10-11 (E.D.N.Y. Sept. 8, 2008); Rosa, 168 F.3d at 78.

---

[2] Exertional limitations are strength limitations that affect a claimant's ability to sit, stand, walk, carry, push, and pull. Zorilla v. Chater, 915 F.Supp. 662, 667 n. 3 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1569a(b)). Non-exertional limitations are those imposed by impairments that affect a claimant's ability to meet job requirements other than strength demands, including "manipulative impairments and pain." Sobolewski v. Apfel, 985 F.Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569a(a) & (c)). Carpal tunnel syndrome, for example, is a non-exertional limitation.
8

"In cases involving a combination of exertional and nonexertional impairments, the application of the Grids and the necessity for expert testimony (by a vocational specialist) must be determined on a case-by-case basis." Johnston, 2008 WL 4224059, at *11 (citing Bapp v. Bowen, 802 F.2d 601, 606 (2d Cir. 1986)). Though "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines," Bapp, 802 F.2d at 603, where a claimant's "exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform," the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." Rosa, 168 F.3d at 78 (quoting Bapp, 802 F.2d at 603). Because the applicability of the grids in these cases depends on the particular facts of each case, the presiding ALJ must consider and address on the record the combined effects of the claimant's exertional and non-exertional limitations and the advisability of additional testimony before resorting to the grids. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (remanding to the ALJ for a re-evaluation of whether claimant's non-exertional limitations "significantly diminished" his range of work so as to preclude application of the grids); Bapp, 802 F.2d at 606; Samuels v. Barnhart, No. 01-CV-3661, 2003 WL 21108321, at *12-13 (S.D.N.Y. May 14, 2003) (remanding because the "ALJ should have recognized that [claimant] had a nonexertional limitation, and then before turning to the grids he should have considered whether [claimant's non-exertional limitation] significantly limited the range of work permitted by her exertional limitations").

In the instant case, Nigino presented evidence that she suffered from non-exertional limitations, namely bilateral carpal tunnel syndrome, which caused her pain and imposed manipulative limitations, as well as edema, gastrointestinal problems, insomnia, and problems with neck extension. See Sobolewski, 985 F. Supp. at 310. However, at the fifth step, the ALJ failed to

consider the question of whether the range of work Nigino could perform was so significantly diminished by these non-exertional limitations as to preclude reliance on the grids and require the introduction of vocational testimony. This was error. Pratts, 94 F.3d at 39; Bapp, 802 F.2d at 606; Jones v. Barnhart, No. 04-CV-3772, 2004 WL 3158536, at *9-10 (E.D.N.Y. Feb. 3, 2004). Because the ALJ's specific findings at steps two and four are hard to harmonize with the ALJ's ultimate conclusion, it cannot be said that the record adequately supports the ALJ's summary application of the grids. Nor does the muddle of findings allow this Court to determine from the record the extent to which plaintiff's non-exertional impairments would further diminish her capacity to perform sedentary/light work. Consequently, the case must be remanded to the Commissioner so that determination may be plainly made.

On remand, the ALJ must evaluate whether the Commissioner has proven that plaintiff's ability to perform sedentary/light work was not significantly diminished by her non-exertional limitations.[3] See, e.g., Pratts, 94 F.3d at 39. If the ALJ concludes that Nigino's non-exertional limitations significantly diminish her ability to perform sedentary/light work, then he must require the Commissioner to present expert testimony from a vocational expert, or other similar evidence, as to the existence of jobs in the national economy that plaintiff can obtain and perform, Rosa, 168 F.3d at 78, should he conclude that such evidence has not already been satisfactorily presented.

2.  **Development and Evaluation of the Record**

Even though the ALJ's misapplication of the grids is an error of law that, alone, requires remand, the Court briefly addresses several other arguments advanced by Nigino to provide additional guidance for the proceedings on remand.

---

[3] When performing this analysis, the ALJ must consider "the combined effect of [Nigino's] impairments," rather than each impairment in isolation. See Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995) ("the SSA must evaluate [the] combined impact [of impairments] on a claimant's ability to work, regardless of whether every impairment is severe").

10

Plaintiff presses the argument that the ALJ failed to conduct a proper assessment of the credibility of her allegations of symptoms and pain. An ALJ is required to consider a claimant's subjective testimony concerning symptoms and pain. See Aponte v. Barnhart, No. 04-CV-1748, 2005 WL 283209, at *10 (E.D.N.Y. Feb. 7, 2005) (citing 20 C.F.R. § 404.1529(a)). However, "[s]tatements about a claimant's pain cannot alone establish disability; there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged." Davis v. Massanari, No. 00-CV-4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001). If there is such a medically determinable impairment, the ALJ then must evaluate the intensity, persistence, and functionally limiting effects of the claimant's described symptoms in order to determine what effect those symptoms have on the claimant's ability to do basic work activities. Sarchese v. Barnhart, No. 01-CV-2172, 2002 WL 1732802, at *7 (E.D.N.Y. July 19, 2002); Social Security Ruling 96-7p, 1996 WL 374186, at *2 (1996). This evaluation requires the ALJ to consider the claimant's credibility, and, "because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by medical evidence alone," Social Security Ruling 96-7p, 1996 WL 374186, at *1, *3, the credibility determination must take place in light of "all of the available evidence, including the objective medical evidence," see, e.g., Davis, 2001 WL 1524495, at *6; 20 C.F.R. § 404.1529(c)(3).[4]

Here, the ALJ concluded that Nigino's allegations of symptoms and pain did not support a finding of disability because: (1) plaintiff's subjective claims were "largely unsubstantiated by the medical evidence;" (2) her "lack of consistent treatment" raised the inference that her "condition is of a primarily manageable nature;" and (3) plaintiff's completion of a computer course raised the

---

[4] Put another way, assuming a medically determinable impairment that could reasonably be expected to produce symptoms, a claimant's "subjective statements about the intensity and persistence of pain" or the limiting effect of those symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence." Social Security Ruling 96-7p, 1996 WL 374186, at *1; Gunter v. Astrue, 07-CV-8847, 2008 WL 2971703, at *2 (S.D.N.Y. Aug. 1, 2008).

11

inference that she retained the ability to work. (R. at 25.) The third inference drawn by the ALJ undoubtedly is valid and could help support a conclusion that Nigino's testimony was less than credible. However, the decision below does not provide sufficient specificity to enable the Court to determine whether the first two inferences follow, as they must, from an analysis weighing all of the plaintiff's testimony against all of the record evidence. See Gallardo v. Apfel, No. 96-CV-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999) (an ALJ may properly reject as incredible allegations of symptoms and pain, but must "set forth his or her reasons [for doing so] with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence") (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir.1984)); Social Security Ruling 96-7p, 1996 WL 374186, at *7 (an ALJ "must not draw any inference about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"). On remand, when evaluating the impact of Nigino's non-exertional limitations on her ability to perform sedentary or light work at step five, the ALJ should take care to weigh the entirety of plaintiff's subjective evidence -- including her testimony concerning her daily activities -- and all of the objective medical evidence -- including all the medical opinion evidence -- and document his conclusions. See, e.g., Sarchese, , 2002 WL 1732802, at *7-9; 20 C.F.R. § 404.1529(c)(3).

Finally, plaintiff also asserts that the ALJ breached his legal duty by failing to develop fully and adequately the administrative record. The Second Circuit has "stated many times that the ALJ generally has an affirmative obligation to develop the administrative record." Halloran, 362 F.3d at 31; 20 C.F.R. § 404.1512(d). Moreover, where a claimant is unrepresented by counsel, as was the case with Nigino at her hearing below, the "ALJ is under a heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" Echevarria v. Sec'y

of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)).

Of course, there is a flip-side to this proposition. Rosa, 168 F.3d at 79 n. 5. "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Id. (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). Such is the case here with respect to the medical record.

In fact, plaintiff concedes that the ALJ adequately developed the record with respect to her treating sources. (Pl.'s Mem. at 16.) Moreover, it is undisputed that the SSA sought evidence beyond that which plaintiff supplied, by requiring her in advance of the hearing to undergo a disability examination by a consulting physician, Dr. Parker. This development of the record was adequate to eliminate obvious gaps and to provide the ALJ with the medical information he needed to evaluate plaintiff's claim.[5] Perez, 77 F.3d at 48; Johnston, 2008 WL 4224059, at *10; Ruiz v. Astrue, No. 06-CV-5362, 2007 WL 2660069, at *6 (S.D.N.Y. Sept. 12, 2007).

A final instruction on record development is in order. As already noted, the ALJ improperly relied on the grids at the fifth step without first evaluating the impact of plaintiff's non-exertional limitations on her ability to perform sedentary or light work. On remand, the ALJ should consider whether additional testimony from a medical advisor is necessary in order to determine whether

---

[5] Even so, plaintiff argues that the ALJ improperly evaluated this medical record by failing to consider the medical opinion of the state agency physician, Dr. Buonocore. On remand, when determining, at the fifth step, the impact of Nigino's non-exertional limitations on her ability to perform sedentary or light work, the ALJ should evaluate all the medical opinions in the record, regardless of the opinion's source. 20 C.F.R. § 404.1527(d). As part of that responsibility, he must discuss and weigh the opinion of Dr. Buonocore in accordance with the factors enumerated in the regulations, 20 C.F.R. § 404.1527(a)-(e). 20 C.F.R. § 404.1527(f)(2)(ii); Lopez v. Sec'y of Health & Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984); Hunt v. Astrue, No. 06-CV-99, 2008 WL 3836406, at *10 (N.D.N.Y. Aug. 13, 2008); Babcock v. Barnhart, 412 F. Supp. 2d 274, 283 & n. 3 (W.D.N.Y. 2006).

13

Nigino's non-exertional limitations significantly diminish her ability to perform this work. If so, plaintiff should be afforded the opportunity to present rebuttal evidence if she chooses.[6]

## III. CONCLUSION

For the foregoing reasons, plaintiff's claim is remanded for further proceedings not inconsistent with this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
March 30, 2009

ERIC N. VITALIANO
United States District Judge

---

[6] The Court has considered Nigino's other arguments and finds them to be without merit.

14